1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10

11  JANET MIRIAM BRIDGES,          )       NO. CV 16-1130-E
                                   )
12              Plaintiff,         )
                                   )
13       v.                        )       **MEMORANDUM OPINION**
                                   )
14  CAROLYN W. COLVIN, ACTING      )       **AND ORDER OF REMAND**
    COMMISSIONER OF SOCIAL SECURITY, )
15                                 )
                Defendant.         )
16  _____)

17

18       Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS

19  HEREBY ORDERED that Plaintiff's and Defendant's motions for summary

20  judgment are denied and this matter is remanded for further

21  administrative action consistent with this Opinion.

22

23                        **PROCEEDINGS**

24

25       On February 18, 2016, Plaintiff filed a complaint seeking review

26  of the Commissioner's denial of disability benefits.  On April 5,

27  2016, the parties filed a consent to proceed before a United States

28  Magistrate Judge.  On July 13, 2016, Plaintiff filed a motion for

summary judgment.  On October 27, 2016 Defendant filed "Defendant's Memorandum, etc.," which this Court construes as a cross-motion for summary judgment.  The Court has taken the motions under submission without oral argument.  See L.R. 7-15; "Order," filed February 19, 2016.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff asserts disability since May 28, 2008, based largely on allegedly extreme sensitivity to synthetic fumes and odors, following workplace exposure to trichloroethylene ("TCE") (Administrative Record ("A.R.") 55-70, 334, 1033-57).  The Court previously remanded the case for further administrative proceedings because of material ambiguities and inconsistencies in the Administrative Law Judge's previous adverse decision.  See A.R. 1124-31 (Memorandum Opinion and Order of Remand in Bridges v. Colvin, CV 13-5618-E); see also A.R. 1138 (Appeals Council's subsequent remand order).  The Administrative Law Judge ("ALJ") previously had found, inter alia, that Plaintiff: (1) has severe "multiple chemical sensitivity syndrome, asthma extrinsic, and migraine headaches" (A.R. 17); (2) retains the residual functional capacity to perform light work "except she should avoid exposure to fumes, dust, and industrial pollutants . . ." (A.R. 19); and (3) with this capacity, Plaintiff could perform clerical jobs (A.R. 25 (purportedly adopting vocational expert testimony at A.R. 70-72)).  The ALJ's previous hypothetical questioning of the vocational expert had failed to describe accurately the residual functional capacity the ALJ had found to exist.  Instead, the ALJ's questioning had referenced "a work environment that's relatively free of dust and fumes, . . .

1  the kinds of . . . fumes and dust that you're exposed to in a . . .
2  manufacturing situation" (A.R. 70-71).

3

4       Following remand, the same Administrative Law Judge held another
5  hearing and reviewed additional evidence (A.R. 1030-1511).  The ALJ
6  once again found Plaintiff not disabled (A.R. 992-1020).  The ALJ
7  determined that Plaintiff has severe asthma and multiple chemical
8  sensitivities, but retains the residual functional capacity for light
9  work involving simple repetitive tasks "in an environment relatively
10 free of dust and fumes consistent with an office work environment as
11 opposed to a manufacturing work environment" (A.R. 995, 1001).  The
12 ALJ found that, with this capacity, Plaintiff could perform clerical
13 jobs (i.e., office helper, mail clerk, and copy machine operator)
14 (A.R. 1018-19 (adopting vocational expert testimony at A.R. 1068-69)).
15 The vocational expert had testified that if a person were precluded
16 from exposure to "fumes, odors, dust, gases, ventilation, things like
17 perfume, cologne, cosmetics, carpet . . . odors [sic], [and] scents"
18 there would be no jobs that person could perform (A.R. 1070; see also
19 A.R. 72-73 (vocational expert similarly testifying at first hearing)).

20

21      The Appeals Council denied review, stating:

22

23      [T]he [ALJ's] Final Decision properly weighs the medical
24      opinions of Drs. Dahlgreen [sic], DeSouza, and Morgan, as
25      well as the remaining medical opinion evidence. . . .  [T]he
26      Final Decision appropriately followed the guidance of Social
27      Security Ruling 96-7p in evaluating the credibility of the
28      claimant's allegations, identifying multiple bases that

1    undermine that credibility, and properly addressed the

2    statements provided by third parties.  Further, the [ALJ]

3    properly presented the assessed residual functional capacity

4    to the vocational expert at the claimant's hearing held on

5    March 18, 2015.  For these reasons, the Appeals Council

6    concludes that the Final Decision identified and properly

7    addressed the insufficiencies identified by the court.

8

9  (A.R. 978-81 (internal citations omitted)).

10

11                    **STANDARD OF REVIEW**

12

13    Under 42 U.S.C. section 405(g), this Court reviews the

14  Administration's decision to determine if: (1) the Administration's

15  findings are supported by substantial evidence; and (2) the

16  Administration used correct legal standards.  See Carmickle v.

17  Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008).  Substantial

18  evidence is "such relevant evidence as a reasonable mind might accept

19  as adequate to support a conclusion." Richardson v. Perales, 402 U.S.

20  389, 401 (1971) (citation and quotations omitted); see Widmark v.

21  Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                                4

**DISCUSSION**

The ALJ has twice accepted Plaintiff's contention that she suffers from severe multiple chemical sensitivity (A.R. 17, 995).[1]  In the first decision, the ALJ found that Plaintiff should avoid exposure to fumes, dust, and industrial pollutants (A.R. 19).  After remand, the ALJ found that Plaintiff could work "in an environment relatively free of dust and fumes consistent with an office work environment" (A.R. 1001).  In reaching this conclusion, the ALJ analyzed the

---

[1]    For a general discussion of the diagnosis of multiple chemical sensitivity, see <u>Gibbard v. Linn-Bento Housing Authority</u>, 219 F. Supp. 2d 1130 (D. Or. 2002).

Occupational and environmental medicine physician Dr. James Dahlgren authored a letter dated March 24, 2010, wherein he stated that Plaintiff experiences Multiple Chemical Sensitivity, "whereby brief exposures to various chemicals at low doses result in central nervous system dysfunction manifested by severe headache and nausea," requiring rest for hours or days to recover (A.R. 721-22).  Dr. Dahlgren opined that Plaintiff is totally disabled (A.R. 722; <u>see also</u> A.R. 867-68 (Dr. Dahlgren's "Physical Capacities Evaluation" for Plaintiff finding specific environmental limitations); A.R. 870-71 (letter explaining the bases for Dr. Dahlgren's findings)).  The ALJ rejected Dr. Dahlgren's opinions (A.R. 1015-16).

Internist rheumatologist Dr. David Silver reviewed the record and examined Plaintiff for purposes of testifying as an expert witness in Plaintiff's separate civil litigation.  <u>See</u> A.R. 142-251 (Dr. Silver's deposition).  Dr. Silver opined that Plaintiff had suffered a "significant neurologic injury" from her TCE exposure, resulting in her chemical sensitivity, asthma, and other neurologic symptoms (A.R. 234-35; <u>see also</u> A.R. 973-76 (Declaration of David Silver).  Dr. Silver opined that Plaintiff was "incapable of returning to the open labor market" because Plaintiff would have "frequent episodes, whether it [sic] be related to a chemical that she is exposed to or some stimulus, be it her memory, et cetera, that she would not be considered a reliable employee" (A.R. 235, 240-41).  The ALJ also rejected Dr. Silver's opinions (A.R. 1017-18).

extensive medical record and purportedly gave "great weight" to the opinions of Drs. Levine, Soll, Harrison, Thompson, Allems, Soffer, DeSouza, Morgan, and Saleh, as assertedly "consistent with the medical records as a whole, findings on physical and mental examinations and objective testing results" (A.R. 1001-07, 1014-18).[2]   As explained below, the ALJ's analysis does not adequately support the ALJ's conclusion under the applicable standards.

A.   **Summary of the Relevant Medical Opinions**

Consultative examiner Dr. Gerald Levine, an internal medicine and pulmonary disease specialist, examined Plaintiff on December 11, 2008, and reported no abnormalities (A.R. 600-04).  Pulmonary function tests assertedly were normal (A.R. 602, 606-07).  Plaintiff reportedly had no respiratory complaints and no documented respiratory disease (A.R. 603).  Dr. Levine opined that Plaintiff would have no pulmonary limitations (A.R. 603; see also A.R. 605 (Dr. Levine's Work Capacity Evaluation form dated December 31, 2008, noting no pulmonary limits and no preclusion from temperature extremes, airborne particles, gas, fumes, or electromagnetic radiation)).

Occupational medicine physician Dr. Robert Harrison examined Plaintiff several times between August 25, 2008, and January 22, 2009, and noted continued intermittent left-sided sensory problems along the

---

[2]     Elsewhere in the decision, however, the ALJ stated that he had given "little weight" to other opinions rendered by some of these same physicians (Drs. Harrison, Thompson and Saleh) (A.R. 1014).

face and hands, intermittent cognitive problems, and occasional
headaches (A.R. 546-47, 572-73, 593-94; see also A.R. 1351 (Dr.
Harrison testifying that he found no objective evidence to corroborate
Plaintiff's subjective complaints)).  Dr. Harrison diagnosed left
trigeminal neuralgia (A.R. 573).  As of January 2009, Dr. Harrison
indicated that several more weeks were necessary to determine whether
Plaintiff's neurological symptoms would improve (A.R. 546).  On
March 5, 2009, Dr. Harrison again examined Plaintiff and stated that
Plaintiff was improving with migraine treatment, confirming his
working diagnosis that Plaintiff had toxic chemical exposure with the
onset of migraine headaches (A.R. 632).  Dr. Harrison authored a
letter dated May 18, 2009, in which Dr. Harrison diagnosed toxic
chemical exposure, migraine headaches, and trigeminal neuralgia, and
opined that Plaintiff could not return to her work as an air traffic
controller as a consequence of her cognitive impairment and headaches
(A.R. 445-46; see also A.R. 1384-85 (Dr. Harrison opining that
Plaintiff has nerve damage to the trigeminal nerve due to TCE exposure
and that her symptoms were consistent with TCE exposure)).  In this
letter, Dr. Harrison did not offer an opinion concerning Plaintiff's
capacity to work at jobs other than the job of air traffic
controller.  Dr. Harrison apparently did opine in a work capacity
evaluation form that as of January 22, 2009, Plaintiff's condition
precluded exposure to gas and fumes (A.R. 1390).  Dr. Harrison also
opined that as of June 1, 2009, Plaintiff should have no exposure to
chemical solvents and fumes (A.R. 1398, 1403).

On or about January 30, 2009, Dr. Bruce Thompson, an occupational
medicine specialist, examined Plaintiff and reviewed the medical

record (A.R. 420-28).  Plaintiff apparently said she occasionally
experienced increased sensitivity to smell (A.R. 422).  Reportedly,
her cardiovascular and neurological examinations were largely normal,
and Dr. Thompson referenced no environmental restrictions (A.R. 425-29
(limiting Plaintiff only to non "safety-sensitive work"); see also
A.R. 543-45 (supplemental opinion dated March 5, 2009, opining that it
was unlikely that Plaintiff's complaints of mental lapses and speech
syntax were due to TCE exposure)).  Dr. Thompson prepared a Work
Capacity Evaluation form dated January 30, 2009, which checks no
environmental limitations (i.e., no preclusions from temperature
extremes, airborne particles, gas, fumes, or electromagnetic
radiation) (A.R. 623).[3]


        Treating neurologist Dr. Mark Saleh authored a letter dated
April 16, 2009, in which Dr. Saleh opined that Plaintiff's sensory and
cognitive symptoms were migraine equivalents triggered by toxic
exposure (A.R. 454).  Dr. Saleh reportedly had treated Plaintiff with
medication which gave Plaintiff "some improvement" (A.R. 454).  Dr.
Saleh opined that it would not be safe for Plaintiff to return to her
work as an air traffic controller given her cognitive impairment (A.R.
454; see also A.R. 455-60 (Dr. Saleh's treatment notes from January,
February, March and April 2009 reflecting minimal findings on
examination but reports of cognitive and speech issues)).  Plaintiff

---

        [3]     Dr. Harrison reviewed Dr. Thompson's January 30, 2009
evaluation and, in a letter dated April 13, 2009, disagreed with
certain of Dr. Thompson's conclusions (A.R. 439-40).  Dr.
Harrison disagreed that Plaintiff's transient trigeminal
neuralgia secondary to exposure to TCE had resolved, and also
disagreed with Dr. Thompson's conclusion that Plaintiff's
complaints were not due to TCE exposure (A.R. 439).

returned to Dr. Saleh on May 14, 2009, reporting improvement on
medications, feeling cognitively "clearer" and having less stuttering,
with identifiable triggers of wine consumption, stress/anger, and
being overly tired (A.R. 652).  Dr. Saleh continued Plaintiff's
current medications (A.R. 652).  Plaintiff returned on July 20, 2009,
and reported worsening disorientation, which Dr. Saleh thought might
be a medication side effect or a residual symptom, so he decreased her
medication (A.R. 653).  Plaintiff returned on August 20, 2009,
reporting worsening stuttering on decreased medication, as well as
disturbed sleep (A.R. 654).  Dr. Saleh indicated that Plaintiff's
cognitive and sensory symptoms seemed well controlled (A.R. 654).
Plaintiff returned on July 12, 2010, reporting improvement in
cognition and with her stuttering (A.R. 858).  When Plaintiff returned
again on November 19, 2010, she reported "breakthrough events" in
association with exposure to strong chemical odors such as facial
paralysis, cognitive clouding, and stuttering (A.R. 856-57).  Dr.
Saleh opined that strong odors may trigger Plaintiff's migraines, and
told Plaintiff to continue to avoid exposure to strong odors (A.R.
856).

Dr. Thomas Allems examined Plaintiff, reviewed the medical
record, and prepared an "Internal Medicine/Occupational Medicine and
Toxicology Referee Evaluation" dated February 5, 2010 (A.R. 677-96).
Dr. Allems described Plaintiff's condition as having a "distinctly
functional (psychologically mediated, hypersomatic) flavour" "not
related to any organic effect" of the TCE exposure (A.R. 689).  Dr.
Allems did observe Plaintiff begin to stutter and to adopt "a rather
bizarre syncopated speech pattern" for which Dr. Allems discerned no

1   neurological explanation (A.R. 1411, 1419).  Unlike other doctors, Dr.
2   Allems opined, _inter alia_, that: (1) Plaintiff's symptoms are
3   "dominated by psychological factors and are unexplained on a medical
4   or toxicological basis"; (2) TCE exposure would not explain a
5   "migraine equivalent" diagnosis; and (3) Plaintiff has never had
6   "trigeminal neuralgia" (A.R. 693-94).  Dr. Allems agreed that
7   Plaintiff is unable to work as an air traffic controller, and offered
8   no other opinion concerning Plaintiff's ability to work or need for
9   environmental limitations (A.R. 693-95).

10

11       Consultative neurologist Dr. Robin Soffer prepared a neurological
12   evaluation of Plaintiff dated July 22, 2010 (A.R. 753-57).  Plaintiff
13   reportedly complained of cognitive deficits, facial numbness,
14   headaches, and tremors since her TCE exposure, and specifically said
15   she could not return to work due to a "new sensitivity" in that she
16   could not tolerate carpet odors, air fresheners or perfume (A.R. 753).
17   According to Dr. Soffer, examination results were largely normal (A.R.
18   755-56).  Dr. Soffer, diagnosed gastroesophageal reflux disease (A.R.
19   756).  Dr. Soffer opined that Plaintiff could work in a place
20   "relatively fume and dust free and well ventilated," and could take
21   public transportation (A.R. 756).

22

23       State agency review physician Dr. DeSouza prepared a "Physical
24   Residual Functional Capacity Assessment" form dated September 2, 2010
25   (A.R. 771-76).  Dr. DeSouza noted environmental restrictions for
26   avoiding moderate exposure to "[f]umes, odors, dusts, gases, poor
27   ventilation, etc." due to "restrictive lung disease" (A.R. 775).  On
28   March 8, 2011, State agency review physician Dr. B. Morgan agreed with

Dr. DeSouza's residual functional capacity assessment (A.R. 865).

Plaintiff presented to Dr. Mark Soll on February 8, 2012, complaining of a cough (A.R. 878-79). Dr. Soll diagnosed asthma, allergic rhinitis due to pollen, and unspecified chest pain, and prescribed an inhaler (A.R. 878-79). Dr. Soll opined that Plaintiff's asthma is "mild to moderate in severity but not disabling" (A.R. 879).[4]

**B.   The ALJ Erred in Failing Adequately to Explain How He Determined the Particular Environmental Limitations in Plaintiff's Residual Functional Capacity Assessment.**

Although the ALJ purported to give "great weight" to the above-summarized medical opinions in determining that Plaintiff could perform work, the ALJ did not explain adequately how those seemingly conflicting opinions support the ALJ's residual functional capacity assessment. The ALJ must "consider" and "evaluate" every medical opinion of record. 20 C.F.R. § 404.1527(b) and (c); see Social Security Ruling ("SSR") 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted").[5] In this consideration and evaluation, an ALJ "cannot reject [medical] evidence for no reason or the wrong

_____

[4]   Dr. Soll had ordered a "Pulmonary Function Study and Methacholine Challenge" on November 7, 2011, which showed a "moderately positive methacholine challenge" (A.R. 882-95).

[5]   Social Security rulings are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

1   reason."  Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); see
2   Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ may not
3   make his or her own lay medical assessment).  As demonstrated by the
4   above summary, the medical opinions on which the ALJ purportedly
5   relied are inconsistent, and no opinion specifically endorses the
6   particular environmental limitations the ALJ defined in the residual
7   functional capacity assessment.

8

9        The opinions of Drs. Levine and Thompson could support a
10  determination that Plaintiff has no environmental restrictions, and
11  therefore might also support the more limiting environmental
12  restrictions the ALJ adopted.  However, the ALJ did not purport to
13  rely only on the opinions of Drs. Levine and Thompson.[6]  The ALJ also
14  purported to rely on the conflicting opinions of Drs. Harrison, Saleh,
15  Soffer, DeSouza, and Morgan, although the ALJ did not adopt all the
16  limitations set forth by these doctors.  Perhaps most significantly,
17  there is no competent evidence in the record suggesting that a
18  limitation to an environment "relatively free of dust and fumes"
19  "consistent with an office work environment" accurately encompasses
20  the environmental limitations any of these doctors assessed.  The ALJ
21  was not free to accept or reject any of these doctors' conclusions
22  concerning Plaintiff's environmental limitations without explaining
23  the ALJ's reasons for doing so.  Without adequate explanation, without
24  specific support from an expert source, and without potentially
25  synthesizing testimony from a medical expert, the ALJ apparently

26  _____

27       [6]    The Court observes that the opinions of Drs. Levine and
    Thompson were given relatively early in Plaintiff's treatment
28  history.

12

defined his own particular environmental limitations for Plaintiff. This was error. See Joost v. Colvin, 2016 WL 3865924 (W.D. Wash. July 12, 2016) (ALJ erred in failing fully to account for medical opinions in determining claimant's residual functional capacity where claimant had been diagnosed with multiple chemical sensitivity); Jeffries v. Colvin, 2013 WL 6385617 (D. Ariz. Dec. 6, 2013) (same).

An error "is harmless where it is inconsequential to the ultimate nondisability determination." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and quotations omitted).  In light of the vocational expert's testimony, the Court cannot deem the ALJ's errors to have been harmless.

C.   **Remand is Appropriate.**

Remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2010); see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014) (court will

credit-as-true medical opinion evidence only where, _inter alia_, "the record has been fully developed and further administrative proceedings would serve no useful purpose"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

There remain significant unanswered questions in the present record.  Cf. Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (remanding for further proceedings to allow the ALJ to "comment on" the treating physician's opinion).  Moreover, since it appears from the medical evidence that Plaintiff's condition may have been worsening over time, it is not clear on the present record whether the ALJ would be required to find Plaintiff disabled for the entire claimed period of disability even if the more restrictive medical opinions were fully credited.  See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

///
///
///
///
///
///
///
///
///
///

**CONCLUSION**

For all of the foregoing reasons,[7] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 8, 2016.


_____/s/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[7] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that [Plaintiff] is in fact disabled." Garrison v. Colvin, 759 F.3d at 1021.